MICHAEL ZADAN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Zadan v. Commissioner
Docket No. 12135-91
United States Tax Court
T.C. Memo 1993-85; 1993 Tax Ct. Memo LEXIS 96; 65 T.C.M. (CCH) 2059; March 15, 1993, Filed *96 Michael Zadan, pro se. For respondent: William H. Quealy Jr.
FAY
FAY
MEMORANDUM OPINION FAY, Judge: Respondent determined the following deficiencies in and additions to petitioner's Federal income taxes: Additions to Tax
Sec.
Sec.
Sec.
Year Ended
Deficiency
6653(b)(1)
6653(b)(2)
6661
Dec. 31, 1982
$ 28,837
$ 14,418.50
[1]
$ 7,209
Dec. 31, 1983
117,352
58,676.00
[1]
29,338
All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated. After concessions, the only remaining issues before us are: (1) Whether petitioner received gross income from O.E.C. Leasing Corp. during the years 1982 and 1983 in the amounts of $ 51,250 and $ 234,557, respectively. We hold that petitioner did; and (2) whether the respective understatements of petitioner's income tax for the taxable years 1982 and 1983 are attributable *97 to fraud, thus making petitioner liable for the additions to tax under section 6653(b)(1) and (2). We hold that petitioner is liable for the additions to tax for fraud under section 6653(b)(1) and (2). A trial was held in this case on May 8, 1992, in San Diego, California. In addition to the trial, the record in this case includes matters deemed admitted under Rule 90(c) in connection with respondent's request for admissions filed on February 3, 1992. [1]
Background
At the time the petition was filed, petitioner resided in San Diego, California. During the years at issue, petitioner was an attorney who specialized in Federal income tax matters. Petitioner *98 studied law at the Brooklyn Law School and received his juris doctor degree in June of 1972. Following law school, petitioner attended classes at New York University and received an LL.M. in taxation in June of 1973. During the years at issue, petitioner was licensed to practice law by the State Bars of California, New York, and Georgia. [2] Petitioner was also admitted to practice before the United States Tax Court and was the attorney of record in cases which were submitted or decided by the Court during or near the periods at issue herein. Petitioner engaged in other income-producing activities aside from the practice of law, and during 1978 through 1981, petitioner received real estate consulting fees which were paid to petitioner by checks made payable to Zadan and Associates, Inc. (Z&A). Beginning in May of 1981, petitioner conducted *99 his law practice through a professional corporation entitled Michael C. Zadan A.P.L.C. (APLC). Petitioner did not file Federal individual income tax returns for the years 1982 and 1983, although he testified that he filed State income tax returns with the State of California. Nor did petitioner file corporate income tax returns for his professional corporation, APLC, for the tax years at issue herein. During 1982 and 1983, petitioner was engaged by O.E.C. Leasing Corp. (O.E.C.) to act as a sales representative in the sale of interests in a tax shelter investment offered by O.E.C. As a sales representative for O.E.C., petitioner was paid $ 51,250 during 1982 and $ 234,557 during 1983. O.E.C. paid the above commissions by checks drawn on O.E.C. accounts which were made payable to either petitioner individually or to his professional corporation, APLC. All of the O.E.C. checks were deposited into various accounts maintained by petitioner with California First Bank. Many of these checks were deposited in a corporate account maintained in the name of APLC, while other checks were deposited into an account maintained in petitioner's name. Of the total amount paid by O.E.C. to petitioner *100 during 1982, over 78 percent was paid in checks payable to petitioner individually, while only about 21 percent was paid in checks payable to APLC. Of the total amount paid by O.E.C. to petitioner during 1983, only a single check for $ 190 was made payable to APLC. During the periods at issue, petitioner treated the amounts deposited into his corporate account as a personal "slush fund". Petitioner, in his testimony, diagnosed himself as suffering from a bipolar mental disease characterized by mania and depression, which caused petitioner to engage in various forms of eccentric behavior, including spending binges and illusions of grandeur. Petitioner also testified that he believes that his mental state is influenced by the lunar cycle and that he is most prone to personal eccentricities during full moon phases. Discussion
Issue 1. Income From O.E.C.
By virtue of the deemed admissions under Rule 90(c), the canceled checks of O.E.C. payable to petitioner or his professional corporation and the Forms 1099 issued to petitioner by O.E.C. during the years at issue, we find petitioner received commissions from O.E.C. in the amounts of $ 51,250 and $ 234,557 during the *101 years 1982 and 1983, respectively. Petitioner does not dispute that these commission payments in the amounts set out above were made by O.E.C. Petitioner instead alleges that the commissions were earned by petitioner's corporation and not petitioner individually. Petitioner, however, made contradictory allegations in the record about which one of petitioner's corporations earned the commissions from O.E.C. In his pleadings, petitioner alleged that the corporation which earned the commissions from O.E.C. was Z&A. At trial, petitioner instead testified that APLC was the corporate entity which earned the commission income. Both Z&A and APLC were controlled by petitioner. [3]
The principle that income is taxed to the person who earned it is basic to *102 our system of taxation. . However, in the corporate context, particularly in cases involving closely held or one-person personal service corporations, the true earner of income is not always readily apparent. The realities of the business world prevent the simplistic application of a rule whereby the true earner may be identified by merely pointing to the actual laborer. As we stated in , affd. in an unpublished order : "When a corporate employee performs labors which give rise to income, it solves little merely to identify the actual laborer." This Court follows a two-part test in order to identify the true earner of income in the corporate context. To shift the incidence of taxation to either of his corporations, petitioner must establish both that (1) the corporation controlled the activities of the person whose services generated the income, and (2) there was a contract or other indication of agreement *103 between the professional corporation and the payor of the fees which recognized the corporation's controlling position. ; see . There is no evidence in the record to support the existence of an employee-employer relationship either between petitioner and Z&A or between petitioner and APLC. Nor is there any evidence in the record to establish that O.E.C. had any contractual relationship with Z&A or APLC. In addition, O.E.C. issued Forms 1099 reporting the commissions paid for 1982 and 1983 to petitioner as an individual and not as a representative of either of petitioner's corporations. Although many of the checks from O.E.C. were deposited into a checking account maintained under the corporate name of APLC, we do not find this fact alone to be dispositive on the issue. Petitioner's own testimony is that the money in the corporate account was a "slush fund" used to pay petitioner's expenses. Petitioner further testified that "most of my income didn't even hit my personal bank account." Petitioner's testimony that the income from O.E.C. was earned *104 by APLC is not supported by the evidence in the record. When viewed in the context of the entire record in this case, petitioner's testimony simply is not credible. At the outset, petitioner made contradictory assertions in the record about which corporation was the true earner of the commissions. Moreover, petitioner had previously declared to agents of respondent that petitioner had not used his professional corporation to sell interests in tax shelters. Finally, in documents filed pursuant to the voluntary petition for relief under chapter 7 of the Bankruptcy Code for APLC, petitioner failed to disclose the commissions deposited in the APLC corporate account. This contradicts petitioner's most recent claim that the commission income was attributable to APLC. Thus, we hold that the O.E.C. commission income at issue was earned and paid to petitioner in his individual capacity. Issue 2. Additions to Tax for Fraud Under Section 6653(b)(1) and (2)
The next issue for decision is whether petitioner is liable for additions to tax for fraud under section 6653(b)(1) and (2) for the 1982 and 1983 taxable years. Whether a taxpayer is liable for the addition to tax for fraud *105 is a question of fact to be determined from the entire record. , affg. ; ; . Respondent has the burden of proving fraud by clear and convincing evidence. Rule 142(b); . Fraud is intentional wrongdoing on the part of a taxpayer with the specific intent to evade a tax known to be owing. , affg. ; , affg. . Consequently, respondent must establish: (1) An underpayment by the taxpayer, and (2) that some part of the underpayment is due to fraud. ; . *106 Fraud will never be presumed; however, since direct proof of a taxpayer's fraudulent intent is not readily available, fraud may be proven through circumstantial evidence, and reasonable inferences which can be drawn therefrom. ; . The Ninth Circuit Court of Appeals, to which the instant case is appealable, has identified certain types of circumstantial evidence from which fraudulent intent may be inferred. Such "badges of fraud" include: (1) Understatements of income; (2) inadequate records; (3) failure to file tax returns; (4) implausible or inconsistent explanations of behavior; (5) concealment of assets; and (6) failure to cooperate with tax authorities. . Respondent claims that several such indicia are present in the instant case and that she has met her burden of proving fraud by clear and convincing evidence. We note that petitioner is a highly educated individual and well versed in tax law. We proceed to examine several of these "badges of fraud" in light *107 of petitioner's educational and work background. Petitioner admitted that he failed to file Federal tax returns for the years 1982 and 1983, despite filing State income tax returns for the same periods. Petitioner testified that his failure to file was due to inadvertence. We find petitioner's explanation unpersuasive. Moreover, petitioner's claim of mistake in failing to file his individual income tax returns for the years 1982 and 1983 contradicts petitioner's own declarations in the Statement of Financial Affairs for Debtor Not Engaged in Business filed in his personal bankruptcy proceeding. In these documents, petitioner represented that no individual income tax returns were filed for the years 1982 and 1983 because petitioner's gross income was less than $ 3,300 for each year. We find petitioner's implausible and inconsistent explanations for his failure to file income tax returns and to pay the tax due to be a strong indication of fraud. . More directly, petitioner's use of financial accounts maintained in the name of APLC as a "slush fund" for his personal income is an indication of fraud. . *108 Petitioner's testimony was that these accounts were maintained in the corporate name as a "slush fund" and that "most of my income didn't even hit my personal bank account." Furthermore, the accounts maintained in the name of APLC were not listed as property of the corporation in the bankruptcy filings. Finally, petitioner's lack of adequate books and records and his failure to cooperate with tax authorities is another "badge of fraud". . In the absence of adequate records of income or expenses, respondent found it necessary to issue summonses to petitioner's banks and O.E.C. in order to conduct a proper audit. Petitioner's testimony regarding the state of his bookkeeping is confused at best. Petitioner initially admitted to not being a good bookkeeper. Later he testified that his books and records were "thrown away" in 1987 when he was hospitalized for a period of 40 days and 40 nights. Again, we find petitioner's explanation for his lack of records unpersuasive. Petitioner argues that he should be excused from any civil fraud penalty with regard to petitioner's 1982 tax year because of his mental condition. *109 Petitioner testified that on January 21, 1983, he was admitted to a mental hospital for several days for treatment of mental disorders related to his manic condition. Petitioner, however, summarized his mental condition as "eccentric" but not "insane". There is no evidence in the record whatsoever that petitioner was mentally incapacitated at the time his individual Federal income tax returns for 1982 and 1983 were due to be filed. Yet there is uncontroverted evidence that, during this same period, petitioner was continuing to function in his profession as a lawyer and as a successful tax shelter sales representative. In view of this, we attach minimal weight to petitioner's claim of "diminished mental state" for the period at issue. Thus, we find numerous "badges of fraud" present in the instant case. Petitioner's pattern of failing to file individual income tax returns, his use of a corporate account to conceal his personal income, and his inconsistent explanations for his failures to comply with the revenue laws constitute clear and convincing evidence of fraud. We find that the entire amount of the underpayment in each of the years in issue is due to fraud. Decision *110 will be entered under Rule 155. Footnotes
1. Fifty percent of interest due on the deficiency.↩
1. Petitioner failed to serve on respondent or file with this Court a reply to this request for admissions within the 30 days prescribed by Rule 90(c). By failing to respond to this request for admissions, petitioner is deemed to have admitted the matters contained therein. .↩
2. Petitioner testified that he voluntarily resigned his California Bar license some time after pleading guilty to the felony of making a false statement to a Federal officer in 1986.↩
3. Exhibits 5-E and 7-G consist of voluntary petitions for relief under ch. 7 of the Bankruptcy Code for both Zadan & Associates, Inc. (Z&A), and Michael C. Zadan A.P.L.C. (APLC). These documents disclose that petitioner was the sole shareholder of both corporations.↩